IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

REX HARRISON,                    )     CV. NO. 11-00106 DAE-BMK
                                 )     CR. NO. 07-00384 DAE
                                 )
          Petitioner,            )
                                 )
                                 )
          vs.                    )
                                 )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
                                 )
          Respondent.            )
_____  )

ORDER: (1) DENYING PETITIONER'S § 2255 MOTION AND (2) DENYING
A CERTIFICATE OF APPEALABILITY

After reviewing Petitioner's Motion and the supporting and opposing

memoranda, the Court **DENIES** Petitioner's 28 U.S.C. § 2255 Motion to Vacate,

Set Aside or Correct Sentence.  (Doc. # 188.)  Further, because Petitioner has not

made a substantial showing of the denial of a constitutional right, the Court also

**DENIES** Petitioner a Certificate of Appealability.

BACKGROUND

On August 9, 2007, a Grand Jury indicted Rex T. Harrison

("Petitioner") on four counts: Assault on a Federal Officer in violation of 18

U.S.C. § 111(a)(1) & (b); Misdemeanor Assault on a Federal Officer in violation of

18 U.S.C. § 111(a)(1); and two counts of First Degree Terroristic Threatening

Against a Public Servant in violation of 18 U.S.C. §§ 7(3) & 13 and Haw. Rev.

Stat. § 107-716(1)(c).  (See Doc. # 1, at 2–4.)

        The Ninth Circuit described the facts which gave rise to these charges

as follows:

> This is a tale of two Rex Harrisons. The first is the Harrison of
> Officers Jenkins and Kirby, two military police officers [("MPs")],
> who describe a man so drunk he could barely stand straight.  A man
> who reeked of alcohol at a distance of six feet.  Who snarled, "I don't
> think I should have to give you shit" when asked for his driver's
> license.  A man who punched Officer Jenkins in the face and told
> Officer Kirby, "I'm not afraid of you and I'm not afraid of your
> fucking dog."
>
> The second Rex Harrison is the man of his own telling. This Harrison
> had only "a couple of beers with dinner."  When confronted by the
> officers, he humbly apologized for trespassing. This Harrison was
> calm and non-confrontational; he had the milk of human kindness by
> the quart in every vein. He certainly never hit anyone.
>
> The jury . . . believed the first story[.]

United States v. Harrison, 585 F.3d 1155, 1158 (9th Cir. 2009).

        On November 8, 2007, the Government dismissed one count of

Terroristic Threatening.  (Doc. # 21.)  On November 29, 2007, Petitioner was

convicted by a jury on the remaining three counts.  (Doc. # 49.)  On May 13, 2008,

the Court granted Petitioner's Motion to Dismiss the remaining count of Terroristic Threatening for lack of subject matter jurisdiction. (Doc. # 103, at 11.) On June 30, 2008, Petitioner was sentenced as to Counts 1 and 2 of the Indictment.

Petitioner appealed his Judgment of Conviction and Sentence on September 9, 2008. (Doc. # 139.) The Ninth Circuit affirmed with respect to Count 1 (a felony), but reversed with respect to Count 2 (a misdemeanor). See Harrison, 585 F.3d at 1160–61. Thus, of the four original counts charged by the Grand Jury only Count 1 endures.

Petitioner now challenges the validity of this remaining Count via a § 2255 Habeas Petition. Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence ("Motion") on February 17, 2011. ("Mot.," Doc. # 188.) Attached to the Motion was a Statement of Supporting Facts. ("Supporting Facts," Doc. # 188-1.) The same day, Petitioner filed a Memorandum in Support of the Motion. ("Memo," Doc. # 189.) On June 24, 2011, the Government filed a response. ("Resp.," Doc. # 206.)

## STANDARD OF REVIEW

The Court's review of a petitioner's motion is provided for by statute:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  The scope of collateral attack of a sentence under § 2255 is limited and does not encompass all claimed errors in conviction and sentencing. United States v. Addonizio, 442 U.S. 178, 185 (1979).  Under § 2255, the court shall hold an evidentiary hearing on a petitioner's motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted.  United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

An evidentiary hearing is not required if the petitioner's allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."  United States.

v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).  Mere conclusory statements, without supporting evidence, are not sufficient to require a hearing.  United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).  Although the moving party is not required to detail his evidence, he must "make factual allegations" to establish his right to a hearing.  United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980). The Court has discretion to ascertain whether a claim is substantial before granting a full evidentiary hearing.  Sanders v. United States, 373 U.S. 1, 18 (1963).  That discretion is limited, however, when a petitioner claims that he or she instructed his or her attorney to file an appeal and the attorney failed to do so.  United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005).  In such situations, evidentiary hearings generally are necessary to determine whether the petitioner, in fact, made such an express instruction.  See id.

There are also some general rules regarding what kinds of claims can and cannot be raised in a § 2255 petition.  For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.   As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."  Id. at 162; see also United States v. Berry, 624 F.3d 1031, 1038 (9th Cir.

2010) ("[T]he [Supreme Court] has cautioned that § 2255 may not be used as a chance at a second appeal."); United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.").

Even when a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. See United States v. Frady, 456 U.S. 152, 167–68 (1982) ("[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."); accord Davis v. United States, 411 U.S. 233, 242 (1973); United States v. Johnson, 988 F.3d 941, 945 (9th Cir. 1993) ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error."); Hammond v. United States, 408 F.2d 481, 483 (9th Cir. 1969) ("Section 2255 may not be invoked to relitigate questions

which were or should have been raised on a direct appeal from the judgment of conviction.").  To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors at [her] trial created a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions."  <u>Frady</u>, 456 U.S. at 170.

DISCUSSION

Petitioner raises four grounds for relief in the instant Motion: (1) An actual conflict of interest existed between Petitioner and his trial counsel (Mot. at 4); (2) Petitioner's trial counsel rendered ineffective assistance in violation of the Sixth Amendment (<u>id.</u> at 5); (3) the prosecution knowingly used false evidence and testimony (<u>id.</u> at 7); and (4) cumulative errors deprived Petitioner of Due Process (<u>id.</u> at 8).

I.    <u>Actual Conflict</u>

"Effective assistance of counsel 'includes a right to conflict-free counsel.'"  <u>United States v. Baker</u>, 256 F.3d 855, 859 (9th Cir. 2001) (quoting <u>United States v. Mett</u>, 65 F.3d 1531, 1534 (9th Cir. 1995)).  "In order to establish a Sixth Amendment violation [of the right to conflict-free counsel] . . . [a petitioner] must demonstrate that 'an actual conflict of interest adversely affected his lawyer's

performance.'"  Earp v. Ornoski, 431 F.3d 1158, 1183 (9th Cir. 2005) (quoting

Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)); see also Baker, 256 F.3d at 856

(same); Washington v. Lampert, 422 F.3d 864, 872 (9th Cir. 2005) (same).

        "To show an actual conflict resulting in an adverse effect, [a

petitioner] must [show] that some plausible alternative defense strategy or tactic

might have been pursued but was not and that the alternative defense was

inherently in conflict with or not undertaken due to the attorney's other loyalties or

interests."  Hovey v. Ayers, 458 F.3d 892, 908 (9th Cir. 2006) (quoting United

States v. Wells, 394 F.3d 725, 733 (9th Cir. 2005)); see also Washington, 422 F.3d

at 872 ("The client must demonstrate that his attorney made a choice between

possible alternative courses of action that impermissibly favored an interest in

competition with those of the client." (quotations omitted)).  In other words, a

petitioner "must show (i) that counsel actively represented conflicting interests,

and (ii) that the actual conflict adversely affected counsel's performance."  Baker,

256 F.3d at 856 (quoting Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir. 1988)).

"'While a defendant who shows that a conflict of interest actually affected the

adequacy of his representation need not demonstrate prejudice in order to obtain

relief, the Supreme Court also clarified in Cuyler that until a defendant shows that

his counsel actively represented conflicting interests, he has not established the

constitutional predicate for his claim of ineffective assistance.'" Washington, 422

F.3d at 872 (quoting Garcia v. Bunnell, 33 F.3d 1193, 1198 (9th Cir. 1994)); see

also United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) ("[A]ctual

conflict is a term of art defined by reference not to the nature of the alleged conflict

itself, but to the effect of the conflict on the attorney's ability to advocate

effectively."). A petitioner must carry this burden "through a factual showing on

the record." Baker, 256 F.3d at 860. There are myriad examples of such conflicts

in Ninth Circuit jurisprudence. See, e.g., Summerlin v. Stewart, 267 F.3d 926,

935–41 (9th Cir. 2001) (defense counsel romantically involved with the

prosecutor); Garcia, 33 F.3d at 1194–95, 1198 n.4 (defense counsel had plan to

work for prosecutor's office at the conclusion of defendant's trial); United States v.

Hearst, 638 F.2d 1190, 1193 (9th Cir. 1980) (defense counsel had book contract to

write about defendant's case); Wells, 394 F.3d at 734 (discussing how fees being

paid by a third party can lead to conflicts); United States v. Elliot, 463 F.3d 858,

865 (noting that conflicts of interest can arise in the context of simultaneous

representation).

      Here Petitioner relies upon two statements to argue that his trial

counsel had a conflict of interest, both of which were made in the context of a

Motion to Withdraw as Counsel. On November 1, 2007, Petitioner's trial attorney

Victor Bakke ("Bakke"), who worked for a law office headed by attorney Paul Cunney ("Cunney"), filed a Motion to Withdraw as Counsel.[1] (Doc. # 15.) Cunney argued the motion before United Stated Magistrate Judge Barry M. Kurren on November 5, 2007. (Opp'n, Ex. 2.) At the hearing, Cunney opined that "I would . . . say I think the Attorney-Client Privilege has broken down to the point where it cannot be repaired." (Id. at 2.) From this statement, Petitioner concludes "without a doubt that an actual conflict of interest existed in that his attorneys no longer had any interest in defending him, but just wished to withdraw from the case without preparing for trial." (Memo at 4; see also Supporting Facts at 1.)

Petitioner next relies upon a second ex parte Hearing on a Motion to Withdraw heard before this Court on November 16, 2007 to argue there was an "actual conflict" between himself and his trial counsel. (Opp'n, Ex. 4; Doc. # 35.) There, Cunney represented he was concerned about Petitioner's mental well-being and his ability to prepare for trial. (Id. at 4, 8.) From this, Petitioner concludes that he has demonstrated prejudice because "(1) [t]he attorneys made petitioner out to be a violent person, which prejudiced the Judge, causing him to believe that I would do something as ridiculous as assaulting an MP[; and] (2) [i]t biased the

---

[1] The Court notes that Petitioner was also represented by attorney Dean Hoe ("Hoe") at trial. (See "Bakke Decl.," Opp'n, Ex. 5 at ¶ 3.) Hoe and Bakke (collectively "trial counsel") both worked at the law office headed by Cunney.

Judge against Petitioner when he told petitioner that he had known [Bakke] for 17 years, and that he had never known him to lie, and that his tendency is to believe [Bakke] over petitioner." (Mot. at 4–5; <u>see also</u> Supporting Facts at 2.)

It is unclear to the Court how these statements made by Cunney lead to the conclusion that an "actual conflict"existed between Cunney or Bakke and Petitioner. As explained, "[t]o show an actual conflict resulting in an adverse effect, [a petitioner] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." <u>Hovey</u>, 458 F.3d at 908 (quotations omitted). These decontextualized statements do nothing to illuminate the "other loyalties or interests" which his trial counsel was purported to have held. <u>See id.</u> Nor does Petitioner explain what the "plausible alternative defense strategy or tactic" counsel might have pursued absent the alleged conflict. <u>Id.</u> As the Ninth Circuit has made clear, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." <u>Washington</u>, 422 F.3d at 872 (quotations omitted). There simply is no allegation here of "conflicting interests."

To the extent that Petitioner is arguing that the "other loyalty or interest" was trial counsel's interest in having Petitioner take a plea, the Court is not persuaded. First, there is no law to support the proposition that advising a client to take a plea without more leads to an "actual conflict." Cf. Summerlin, 267 F.3d at 935–41(finding a conflict where defense counsel romantically involved with the prosecutor); Garcia, 33 F.3d at 1194–95, 1198 n.4 (finding a conflict where defense counsel had plan to work for prosecutor's office at the conclusion of defendant's trial); Hearst, 638 F.2d at 1193 (finding a conflict where defense counsel had book contract to write about defendant's case); Wells, 394 F.3d at 734 (discussing how fees being paid by a third party can lead to conflicts); Elliot, 463 F.3d at 865 (noting that conflicts of interest can arise in the context of simultaneous representation).

Assuming arguendo, however, that an attorney advising a client to plea could lead to an "actual conflict" between the attorney and his client, the record does not demonstrate "that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the client." Washington, 422 F.3d at 872. Trial counsel did not here coerce Petitioner into taking a plea. Instead, Petitioner went to trial. Moreover, at the ex parte hearing the Court engaged in a lengthy colloquy with Petitioner,

Cunney, and Bakke in which Bakke made clear that he <u>would be prepared</u> for trial as Petitioner desired.  (Opp'n, Ex. 4, at 23–25.)  Indeed, Bakke has addressed Petitioner's allegations of an actual conflict and stated:

> [T]o my knowledge, there were no conflicts between [Petitioner] and my co-counsel, Dean Hoe, or with myself after the Court resolved the pending conflicts during the November 16, 2007, hearing.  Indeed, after the <u>ex parte</u> hearing . . . Dean Hoe and I worked very hard to prepare the criminal case for trial. [Petitioner] assisted us in that endeavor and I recall no conflicts during that effort.  I believe that all three of us worked well together in preparing the case for trial.
>
> 4.      Likewise, [Petitioner] assisted Mr. Hoe and me during the trial itself.  Again, as far as I know, there were no conflicts between Mr. Harrison and either Mr. Hoe or myself during the actual trial.

("Bakke Decl.," Opp'n, Ex. 5 at ¶¶ 3–4.)  Accordingly, the record illustrates not only that trial counsel did not make "a choice [which] impermissibly favored an interest in competition with those of the client,"  <u>Washington</u>, 422 F.3d at 872, but also that trial counsel worked diligently on Petitioner's behalf to provide an adequate defense at trial against the trial counsel's alleged interest in having Petitioner agree to a plea.  In sum, there was no "actual conflict" as Petitioner suggests, and, even assuming there had been a conflict, the record reflects that it in no way adversely affected counsel's performance.

Although Petitioner has here used the term "conflict of interest" and "actual conflict," as well as cited to some of case law which has been discussed

supra, it may be that Petitioner actually is trying to assert that there was such an irreconcilable disagreement between himself and his counsel that he was denied meaningful representation. See Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007); Daniels v. Woodford, 428 F.3d 1181, 1197 (9th Cir. 2005).

"Not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights[,]" however. Schell v. Witek, 218 F.3d 1017, 1021 (9th Cir. 2000) (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983)). The Sixth Amendment does not require or guarantee that an attorney-client relationship be "meaningful" or free of discord. Morris, 461 U.S. at 13–14; see also Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc). A conflict between a defendant and his attorney implicates the Sixth Amendment "only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." Stenson, 504 F.3d at 886 (citing Schell, 218 F.3d at 1026); Daniels, 428 F.3d at 1197.

Here it cannot be said that there was such a "complete breakdown in communication" between Petitioner and trial counsel such that Petitioner was denied effective assistance of counsel. See Stenson 504 F.3d at 886. Not only, as discussed supra, did Petitioner and trial counsel diligently work together to prepare for trial, (see Bakke Decl. at ¶¶ 3–4,) but Petitioner himself stated multiple times

14

on the record that he wished to have Bakke continue to represent him.  (See Opp'n, Ex 4, at 2; Opp'n, Ex. 2, at 3.)  Indeed, Petitioner opined that "Bakke is my best chance to have my case properly addressed and explained."  (Opp'n, Ex. 2, at 3.)  At the ex parte hearing Petitioner further characterized his relationship with Bakke as "absolutely perfect, fine" and described his recent disagreement with Cunney over whether to settle as "a little bit of a run-in."  (Opp'n, Ex. 4, at 2.)  The record simply does not support the conclusion that there had been "a complete breakdown in communication."  See Stenson 504 F.3d at 886.  To the contrary, the record bears out that Petitioner was quite satisfied with his trial counsel's performance.  The mere fact that he disagreed with Cunney about whether to take a plea does not lead to the conclusion that Petitioner's Sixth Amendment rights were compromised.  See Morris, 461 U.S. at 13–14 (finding that the Sixth Amendment does not require or guarantee that an attorney-client relationship be free of discord.)

Petitioner's contention that an actual conflict existed between him and his trial attorneys is therefore without merit.

II.    Effective Assistance of Counsel

Petitioner next alleges that his trial counsel "rendered ineffective assistance" in violation of the Sixth Amendment. Petitioner raises seventeen grounds in which he alleges counsel was ineffective.

The United States Supreme Court has interpreted the guarantee of a fair trial in the Sixth Amendment of the United States Constitution to encompass the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684–85 (1984). Accordingly, counsel's failure to provide adequate legal assistance may deprive a defendant of the constitutional right to counsel. Id. at 686. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) in light of all the circumstances, his counsel's performance was outside the "wide range of professionally competent assistance," by identifying specific material errors or omissions and (2) his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different. Id. at 687–89; see also Hensley v. Christ, 67 F.3d 181, 184–85 (9th Cir. 1995) (a

petitioner must show that "his counsel's performance was so deficient that it fell below an 'objective standard of reasonableness.' In addition, a [petitioner] must show that the deficient performance prejudiced the defense and made the trial results unreliable."). To successfully demonstrate ineffective assistance of counsel, Petitioner must satisfy both prongs of the test.

The performance inquiry considers whether counsel's assistance was reasonable considering all of the circumstances. Id. at 688. There is no particular set of detailed rules to apply to determine whether the assistance was reasonable. Id. A court's scrutiny of counsel's performance must be highly deferential to counsel. Id. at 689. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quotations omitted); see also United States v. Austin, 817 F.2d 1352, 1354 (9th Cir. 1987) (finding a strong presumption that an attorney provided effective assistance); Michel v. Louisiana, 350 U.S. 91, 101 (1955) (defendant must overcome presumption of effectiveness, including the possibility that, under the circumstances, the challenged action might be considered sound trial strategy). Counsel's strategic decisions made after thorough investigation of the law and facts are virtually unchallengeable. Strickland, 466 U.S. at 690.

It is not enough that the defendant show counsel's actions were unreasonable; the defendant also must affirmatively prove prejudice.  <u>Id.</u> at 693. Put simply, "even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." <u>Id.</u> at 693.  Indeed, judicial scrutiny of counsel's performance must be highly deferential and must take into account the facts of the particular case, viewed at the time of counsel's conduct.  <u>See id.</u> at 689–90.

Finally, trial counsel is not required to present a particular defense merely because the defense might be available and viable.  <u>Mickey v. Ayers</u>, 606 F.3d 1223, 1238 (9th Cir. 2010).  For example, counsel may forego a certain defense because the defense is not entirely persuasive, is subject to serious cross-examination, or would expose the jury to the defendant's other wrongdoing.  <u>Id.</u>

A.    <u>Federal Jurisdiction</u>

Petitioner's first argument relates to federal jurisdiction.  Petitioner contends that his counsel insufficiently researched federal jurisdiction sufficient to challenge the criminal jurisdiction of the United States Federal Government. Specifically, Petitioner argues that the incident occurred in the State of Hawaii and that the United States "had not secured a cession of jurisdiction from the state"

such that this Court had jurisdiction to hear his case. (Supporting Facts at 3; Memo at 6–7.)

As a preliminary matter, the issue of the Court's jurisdiction could have been raised on Petitioner's direct appeal to the Ninth Circuit, but was not. Petitioner has not demonstrated "cause" for his delay in raising this issue and is therefore procedurally barred from raising it now under the guise of an ineffective assistance of counsel claim. See Frady, 456 U.S. at 167–68; Johnson, 988 F.2d 941 ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.").

In any event, Petitioner's argument is misplaced. While the location of the assault was at issue for Count 3,[2] it was not at issue with respect to Count 1, which, as discussed, charged a violation of 18 U.S.C. § 111. This statute does not criminalize the assault of a federal officer only in specific areas or territories. See 18 U.S.C. § 111. Instead, it is unlawful to assault a federal officer in the course of his official duties anywhere in the United States. See, e.g., United States v.

---

[2] Count 3 of the Indictment charged a violation of Hawaii law as incorporated into federal law under the Assimilative Crimes Act, 18 U.S.C. §§ 7(3) and 13. It required proof that the charged offense occurred within the special maritime/territorial jurisdiction of the United States.

<u>Anchrum</u>, 590 F.3d 795, 798–99, 806 (9th Cir. 2009) (affirming the sentence of an individual who assaulted a federal officer in Alaska).

Trial counsel's failure to argue jurisdiction based on where the occurrence took place with respect to Count 1 was not, therefore, outside of the "wide range of professionally competent assistance."  <u>See</u> <u>Strickland</u>, 466 U.S. at 687–89.  Indeed, any such an argument would have plainly been meritless.

B.    <u>Official Duties</u>

Building on his ill-founded jurisdiction argument, Petitioner argues that his counsel was ineffective for failing to argue that the MP he assaulted could not have been in the course of his official duties as he was on an easement over which the Federal Government did not have jurisdiction.  (Memo at 7–10; Supporting Facts at 2.)  This argument fails for multiple reasons.  First, Petitioner did not raise any issue with respect to the easement on his appeal, nor has he proffered a reason for failing to do so.  Accordingly, he is procedurally barred from raising it now.  <u>See</u> <u>Frady</u>, 456 U.S. at 167–68; <u>Johnson</u>, 988 F.2d 941 ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.").  Second, as discussed <u>supra</u>, it is unlawful to assault a federal officer acting in the

course of his duties anywhere in the United States, it does not matter that the United States Government did not own the easement upon which the assault occurred.  Third, Petitioner's counsel <u>did</u> research and investigate the easement as it was the subject of trial counsel's cross examination of Michael Sakai, chief of the real estate branch for the United States Army Corp of Engineers.  (Opp'n, Ex. 9 at 45, 57–60, 63–67.)  Thus, there is no factual basis to assert that Petitioner's attorneys were unaware of the existence of an easement.  Finally, the evidence adduced a trial demonstrated that the assaulted MP was acting within the scope of his employment.  The Ninth Circuit has held that "for the purposes of 18 U.S.C. § 111, the test of a Government agent's conduct is whether he is acting within the scope of what he is employed to do, as distinguished from engaging in a personal frolic of his own."  <u>United States v. Juvenile Female</u>, 566 F.3d 943, 949–50 (9th Cir. 2009) (citations and quotations omitted).  Here the evidence demonstrated at trial that the assaulted MP was investigating whether there were individuals unlawfully on a beach area when he encountered Petitioner.  Plainly, the MP was in the course of his official duties.  Accordingly, Petitioner has failed to satisfy either prong under <u>Strickland</u> on these grounds.[3]

---

[3] The Court notes that these findings are sufficient to defeat Petitioner's third ground for alleging ineffective assistance of counsel, specifically that trial counsel should have hired an expert to investigate the jurisdiction issue.  (Supporting Facts at 2.)

C.   Closing Argument

In his Motion, Petitioner also argues that trial counsel "failed to emphasize the importance of the fact that [he] called the Honolulu Police Department for help." (Supporting Facts at 3.) The Court is not persuaded.

Petitioner's argument here seems to be that his trial counsel should have used the phone call to the Honolulu Police Department as a means of demonstrating he acted as an innocent man after the incident. Bakke, however, presented this exact argument to the jury. Specifically, Bakke stated:

> And [Petitioner] did what an innocent person would do. He contested what happened to him that night, he took pictures of his injuries, he filed a complaint with their command, he came to court and testified, and he testified consistently and respectfully.

(Opp'n, Ex. 10 at 223.) The Court will not here second guess Bakke's decision to omit the fact that Petitioner also called the police for help as well. Indeed, the Ninth Circuit characterized the phone call to the police as "spurious." Harrison, 585 F.3d at 1155. It may be that Bakke decided that by emphasizing a "spurious" phone call in his closing argument to the jury, he would undercut his argument that Petitioner acted as an innocent individual. This is precisely the sort of second guessing of trial counsel's strategic decision that Strickland cautions against. See 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

Moreover, even assuming Bakke's failure to mention the phone call to the police department somehow fell outside the "wide range of professionally competent assistance," see id, 466 U.S. at 687–89, Petitioner has not demonstrated that this error "had an adverse effect on the defense." Id. at 693. The jury simply did not believe, despite the fact that Petitioner may have subsequently acted innocently, that he was innocent. Petitioner has not demonstrated that a greater emphasis on the phone call to the police would have changed that result. As the Ninth Circuit found, the jury simply did not believe Petitioner. Harrison, 585 F.3d at 1158. Accordingly, Petitioner has failed to satisfy either prong under Strickland.

D.     Petitioner's Testimony

Petitioner next argues that his trial counsel "did not prepare [him] to testify and there was no effort in this regard." (Supporting Facts at 3.) He goes on to state that "[t]his is particularly important being that my testimony was the centerpiece of the defense in my case and did not allow me to adequately or accurately portray the events." (Id.) Again, the Court is not persuaded.

Petitioner's claim is contradicted by Bakke's declaration submitted to the Court. Bakke states, under oath, that his co-counsel, Hoe, spent five hours preparing Petitioner for his trial testimony. (Bakke Decl. at ¶ 5.) Bakke further states in his Declaration that based on his experience, Petitioner's preparation "was more than adequate," especially in light of the fact that he had two attorneys helping to prepare him for trial. (Id.) This severely undercuts the veracity of Petitioner's claim that "Trial Counsel did not prepare me to testify." (Supporting Facts at 3.)

Moreover, beyond these bald allegations, Petitioner does not specify how much time he spent with trial counsel or how a change in testimony would have helped him. He does not identify what in his testimony was not persuasive and how a change in his testimony could have convinced the jury to believe his version of events. In other words, even if these assertions were true, they do not in themselves demonstrate prejudice. The jury simply found the Petitioner did not testify truthfully, and the Petitioner does not allege—nor does the record suggest—an assertion that his counsel told him to lie while testifying. Accordingly, Petitioner has failed to satisfy Strickland's second prong. See 466 U.S. at 693.

E.     Count 3

Petitioner next argues that trial counsel failed to notice that Count 3 should have been dismissed before the jury trial.  (Supporting Facts at 3.) Petitioner asserts that despite the fact that Count 3 was ultimately dismissed after the jury trial, he was prejudiced "because evidence/testimony was presented as to Count 3 that would not have otherwise been relevant and was used solely to taint [him] to the jury."  (Id.)

Once more, Petitioner's failure to raise this issue on direct appeal as well as his failure to proffer a justification for not doing so precludes him from raising it now in the context of a § 2255 Petition as an ineffective assistance of counsel claim.  See Frady, 456 U.S. at 167–68; Johnson, 988 F.2d 941 ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.").

Moreover, Petitioner has failed to specify what evidence proffered to prove Count 3 prejudiced him with respect to Count 1.  Thus, even assuming trial counsel acted unreasonably by failing to object to Count 3 before the case was presented to the jury, Petitioner has still not satisfied Strickland; he has made no showing that trial counsel's failure to object to Count 3 "had an adverse effect on

the defense." 466 U.S. at 693. Petitioner has not, therefore, demonstrated he suffered prejudice.

F.     Self-Defense

Petitioner also argues that trial counsel was ineffective for failing to argue self-defense to the jury. (Supporting Facts at 3; Memo at 10–11.)

At trial Petitioner explicitly testified that he <u>did not</u> punch the MP in question. Indeed, his trial counsel asked him directly whether he "at any time punch[ed] or str[uck] Officer Jenkins" to which Petitioner responded unambiguously, "No, I did not." (Opp'n, Ex. 11 at 4-27.) In light of this testimony, it is hard to conceive of how trial counsel could have argued self-defense. As Bakke states in his declaration to the Court:

> [Petitioner] also complains that I did not make a self-defense argument to the jury or seek a self-defense jury instruction. [Petitioner,] however, in his own trial testimony denied ever hitting either law enforcement officer and, consequently, self-defense, as both a factual and legal matter, could not be argued to the jury. By his own testimony, Mr. Harrison left us with only one defense: that he never assaulted the law enforcement officers and not that such an assault was done in self-defense.

(Bakke Decl. ¶ 10.) The Court agrees. In light of Petitioner's testimony, trial counsel was effectively precluded from arguing self-defense. Accordingly, trial counsel's failure to argue self-defense was not ineffective assistance.[4]

G.    Fourth Amendment

Petitioner next argues that his trial counsel was ineffective for failing to "adequately protect my 4th Amendment Right to probable cause, which also made the MP's detaining and arresting [him] illegal." (Supporting Facts at 3–4; see also Memo at 12–13.) Petitioner goes on to outline some Fourth Amendment caselaw surrounding Terry stops. (Memo at 13.)

Petitioner here is not truly making an ineffective assistance of counsel claim. He is actually arguing that because the MPs did not have probable cause to stop him, they were not acting within the scope of their official duties. (See Supporting Facts at 3–4; see also Memo at 12–13.) Petitioner failed to raise this issue on direct appeal and has also failed to proffer a justification for not doing so. He is precluded from raising it now in the context of a § 2255 under the guise of an ineffective assistance of counsel claim. See Frady, 456 U.S. at 167–68; Johnson,

---

[4] The Court notes this rational is also sufficient to defeat two more of Petitioner's grounds supporting his claim of ineffective assistance. Specifically that trial counsel should have proffered an "imperfect self-defense" argument to the jury as well as a "use of reasonable force to resist an unlawful arrest" argument to the jury. (Supporting Facts at 3.)

988 F.2d 941 ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.").

In any event, the MPs in question testified that they lawfully approached Petitioner because he was trespassing on federal property. (Opp'n, Ex. 12, at 1-72–78; Opp'n, Ex. 13, at 115.) The jury plainly believed the Officers and the record does not support Petitioner's version of events. (See Supporting Facts at 3–4.) Under these circumstances, the Court cannot conclude that trial counsel was ineffective for failing to delve into these Fourth Amendment issues. Indeed, trial counsel is not required to present a particular defense merely because the defense might be available and viable. Mickey, 606 F.3d at 1238. For example, counsel may forego a certain defense because the defense is not entirely persuasive, is subject to serious cross-examination, or would expose the jury to the defendant's other wrongdoing. Id. Here, "the entire defense strategy was to ask the jury to believe [Petitioner's] trial testimony that he did not lose his temper and assault the law enforcement officer." (Bakke Decl. ¶ 8.) As the Court noted before, it will not second-guess trial counsel's reasonable decision to focus their defense on this argument. See Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to

second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Petitioner has not, therefore, satisfied the first prong of <u>Strickland</u>.

H.     <u>Background Research</u>

Petitioner argues next that trial counsel erred by not conducting "background research on the government's witnesses to see if there had been any past instances of false allegations and/or physical abuse of someone they had stopped in the past."  (Supporting Facts at 4.)  Petitioner also alleges his counsel "failed to interview the government's witnesses."  (<u>Id.</u>)

Petitioner's first allegation is contradicted by the record.  Trial counsel requested that the Government obtain personnel files on the MPs pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29, 30–31 (9th Cir. 1991).  (<u>See</u> Opp'n, Ex. 14.)  The Department of the Army subsequently conducted "a criminal history check . . . which resulted in negative findings for perjurious conduct or other forms of dishonesty."  (Opp'n, Ex. 15.)  Accordingly, trial counsel did conduct background research on the government's witnesses.

Petitioner's second allegation on this ground, that his counsel "failed to interview the government's witnesses" is also meritless.  (Supporting Facts at 4.)

Petitioner is again inviting this Court to second-guess what could otherwise be considered sound trial strategy. Trial counsel may well have decided it was better not to "tip its hand" by interviewing the Government witnesses before trial. This is a permissible strategy. See Strickland, 466 U.S. at 689.

Nor has Petitioner demonstrated how any such failure to interview the government witnesses before trial would have lead to a different outcome. Indeed, it was clear from reports and other materials in the possession of trial counsel what the witnesses' testimony would be at trial. Id. at 693. Accordingly, Petitioner has failed to satisfy either Strickland prong.

I.      Police Recordings

Petitioner next argues that trial counsel should have obtained police radio traffic recordings which would have shown that the MPs never called for backup for an assault. (Supporting Facts at 4.) As Petitioner's own exhibit demonstrates, however, testimony was elicited at the trial which plainly states that the MPs never called in for assistance with the assault. (Mot., Ex. Q., at 2.) Thus, even assuming it was error not to obtain the police recordings, Petitioner has failed to demonstrate he was prejudiced by this omission as the jury heard uncontroverted testimony stating that the MPs did not call in for assistance, but still convicted Petitioner. Strickland's second prong has not been satisfied. See 466 U.S. at 693.

J.     14th Amendment

Petitioner also argues that trial counsel "failed to protect my 14th Amendment Rights by not letting the jury know that the Honolulu Police Officer, who showed up on the scene had violated my due process rights, by not taking a report from me."  (Supporting Facts at 4.)  Petitioner further alleges, that the Honolulu Police Department should have made the arrest since the occurrence happened on state land, and that the police violated his rights by allowing the MPs to arrest him.  (Id.)

As a preliminary matter, the Court has already addressed Petitioner's claim with respect to the location where the incident took place supra.  Thus, there was no violation of Due Process when the arrest was made by the MPs.  Further, at issue before the jury with respect to Count 1 was: (1) whether Petitioner intentionally used force to assault the MP; (2) whether Petitioner did so while the MP was engaged in his official duties; and (3) whether Petitioner caused bodily harm to the MP.  (Opp'n, Ex. 8.)  Petitioner has not demonstrated how the Honolulu Police Officer's ("State Officer") failure to take his statement would have a probative effect on any of these three issues.  Accordingly, Petitioner has not satisfied either prong of Strickland on these grounds.

K.     <u>Prosecutorial Misconduct</u>

Petitioner turns next to the improper questioning and vouching conducted by the Prosecution during the trial.  (Supporting Facts at 3; Memo at 13–14.)  Petitioner contends his trial counsel committed error when it failed to object to the either the questioning or the vouching.  (<u>Id.</u>)  This argument fails as well.

The Ninth Circuit has already specifically addressed this precise issue on direct appeal.  The Ninth Circuit noted the prosecution violated "black letter law" when it asked "[Petitioner] to comment on the truthfulness of another witness" and that the prosecution also "crossed the line" when it vouched for the MPs' credibility in its closing arguments.  <u>Harrison</u>, 585 F.3d at 1158–59.  Nonetheless, the court concluded that "[a]fter four witnesses undermined [Petitioner's] credibility, we cannot say the prosecutors' misconduct affected the outcome of the district court proceedings."  <u>Id.</u> at 1159.  Because the underlying basis for this ineffective assistance of counsel claim was plainly addressed on direct appeal, Petitioner is barred from raising in the instant Motion.  <u>Hayes</u>, 231 F.3d at 1139 ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.").  The Court therefore will not now consider it.

L.    False Testimony

Petitioner next argues that his trial counsel "failed to point out to the jury or otherwise, the several instances of provably false testimony." (Supporting Facts at 4.) Petitioner provides the Court with three examples of "false" testimony: (1) the government's witness testified the easement was only twenty feet when in actuality it was eighty feet; (2) the State Officer testified he saw bruising on the face of the assaulted MP but did not report it; and (3) the MP failed to report completely on the incident. (Supporting Facts at 4–5.)

As a preliminary matter, the Court notes that there was an overwhelming amount of testimony proffered at trial against Petitioner. The Government called ten witnesses, including four MPs and a Honolulu Police Officer, each of whom testified credibly against the Petitioner. (See Doc. # 24.) Indeed, it was Petitioner's own false testimony which essentially resulted in his conviction. See Harrison, 585 F.3d at 1158 (" The second Rex Harrison is the man of his own telling. This Harrison had only 'a couple of beers with dinner.' When confronted by the officers, he humbly apologized for trespassing. This Harrison was calm and non-confrontational; he had the milk of human kindness by the quart in every vein. He certainly never hit anyone. . . . The jury [did not believe this story.]").

33

Turning now to each of Plaintiff's allegations, first, as the Court has already concluded, the size of the easement was irrelevant for Count 1 of the indictment. Accordingly, Petitioner has failed to demonstrate any prejudice by his counsel's failure to draw attention to the alleged false testimony relating to the size of the easement. See Strickland, 466 U.S. at 693. With respect to the State Officer's failure to report bruising on the MP in his report that evening, Petitioner's trial counsel did actually raise this issue on cross examination of the State Officer. (Opp'n, Ex. 18.) Finally, trial counsel discussed in his closing arguments the MPs' failure to properly document the incident in their reports. (See Opp'n, Ex. 10 at 4-214–15.) Accordingly, the record simply does not support Petitioner's claims with respect to these grounds. Petitioner has failed to satisfy either prong of Strickland.

M.      Counsel's Preparedness

Finally, Petitioner argues that trial counsel admitted in two hearings, one before Judge Kurren and one before this Court, that they were not prepared for trial. (Supporting Facts at 5; Memo at 15–16.) Petitioner's argument seems to be that by so stating at these hearings, they must ultimately have rendered ineffective assistance.

While it is true that in the ex parte Hearing before this Court—the latter of the two hearings at issue on these grounds—trial counsel admitted they were not at that time prepared for trial, the Court, as discussed supra, engaged in a lengthy colloquy to determine whether they would be prepared by the start of trial. The culmination of this discussion was as follows:

> THE COURT: Now, this is not a difficult case.  I think Mr. Bakke agrees with me that, given his knowledge of the case, if you cooperate with him, he'll be ready to go to trial by Tuesday.
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you agree with that, Mr. Bakke?
> MR. BAKKE: Yes, Your Honor.

(Opp'n, Ex. 4 at 25.)  Indeed, Mr. Bakke's declaration speaks to the amount of work that Bakke, Hoe, and Petitioner put into preparing for the trial after the ex parte hearing but before the trial.  (Bakke Decl. ¶¶ 4–5.)  Thus, while it is true at the time of the ex parte Hearing trial counsel may not have been completely prepared, the record makes clear that by the time of the trial, counsel was, in fact, fully prepared.  Moreover, Petitioner has not demonstrated with any specificity what aspects of trial counsel's performance was deficient and how he was prejudiced by any such alleged deficiencies.  Accordingly, Petitioner has failed to satisfy either prong of Strickland.  In sum, the Court finds that trial counsel did not render ineffective assistance.

III.    Use of False Evidence

      Petitioner argues that his Fifth Amendment right to Due Process was violated when the prosecution knowingly used false evidence and testimony. (Mot. at 8.)  Petitioner proffers five alleged instances where knowingly used false evidence and testimony was used to convict him.  (Supporting Facts at 7–10.)

      "It is a prosecutor's duty to 'refrain from knowingly presenting perjured testimony and from knowingly failing to disclose that the testimony used to conflict defendant was false.'" United States v. Geston, 299 F.3d 1130, 1135 (9th Cir. 2002) (quoting United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991)); see also United States v. Williams, 547 F.3d 1187, 1202 n.13 (9th Cir. 2008) (same); Allen v. Woodford, 395 F.3d 979, 995 (9th Cir. 2005).  To prevail on such a claim, petitioner must demonstrate "(1) the prosecution actually presented false testimony; (2) the prosecution knew or should have known that the testimony was false; and (3) the false testimony was material to the outcome of the trial."  United States v. Pelisamen, 641 F.3d 399, 407 (9th Cir. 2011) (citing Hein v. Sullivan, 601 F.3d 897, 908 (9th Cir. 2010).  "False evidence is material 'if there is any reasonable likelihood that the false [evidence] could have affected the judgment of the jury.'" Hein, 601 F.3d at 908 (quoting United States v. Zuno-Acre, 339 F.3d 886, 889 (9th Cir. 2003)).

Petitioner first claims that the State Officer's testimony that he saw bruising on the assaulted MP's face must have been false because the State Officer did not report any injuries on the night of the occurrence. (Supporting Facts at 7.) A factual inconsistency between what was contained in the report and what the State Officer claims to have seen does not necessarily yield the conclusion that the testimony was false. His failure to report it makes his testimony less credible, but not false. It was the jury's role to determine whether to credit the officer's testimony in light of his failure to include the injury in his report. Accordingly, Petitioner has not demonstrated that the Government proffered actually false testimony with respect to the State Officer's testimony. See Pelisamen, 641 F.3d at 407.

Petitioner next turns to the alleged false testimony elicited from the Government's expert witness on federal jurisdiction. (Supplemental Facts at 7.) Petitioner argues that his testimony was false because although the easement at issue was eighty feet wide, the expert testified that it was only twenty feet wide. (Id.) Even assuming that this testimony was in some manner false, and the government knew or should have known it was false,[5] it is still immaterial. As

_____

[5] The Court notes, however, that there is no credible evidence that the prosecution knew or should have known of any false testimony regarding the jurisdictional question.

discussed <u>supra</u>, the location of the assault was <u>immaterial</u> with respect to Count 1.

Accordingly, Petitioner has not demonstrated there was "'any reasonable

likelihood that the false [evidence] could have affected the judgment of the jury'"

with respect this Count.  <u>See</u> <u>Hein</u>, 601 F.3d at 908 (quoting <u>Zuno-Acre</u>, 339 F.3d

at 889).

 Petitioner's third allegation of false testimony is a bit confusing.

According to Petitioner, one of the testifying MPs claimed that he saw the

Petitioner's vehicle pass him at a high rate of speed, saw the Petitioner pull over,

and witnessed the Petitioner urinate in front of his vehicle's headlights.

(Supporting Facts at 7.)  Petitioner claims that this same MP also claimed later to

have seen the same vehicle sitting by the beach where the altercation took place.

(<u>Id.</u>)  Petitioner argues it would be impossible for him to have arrived at the beach

ahead of the MP since "they passed [him] stopped on the side of the road."  (<u>Id.</u>)

Petitioner also argues that if he passed the Federal Officer at a high rate of speed,

he would not have had the opportunity to watch Petitioner urinate.  (<u>Id.</u> at 7–8.)

 These were all questions and issues for the jury to sort out.  It is not

the Court's role to speculate here on how these issues were resolved in the jury

room.[6]  Suffice it to say, however, that at worst this testimony is conflicted, but not

---

[6] The Court notes, however, that it is entirely possible that the jury reached a cohesive story in sifting through this testimony.  For instance, perhaps the jury

false.  Nor has Petitioner demonstrated that the prosecution knew or should have known it was false.  And further, Petitioner has not demonstrated that this allegedly false testimony would have had any effect on the jury's ultimate conclusion as the issue with respect to Count 1 was whether Petitioner struck the MP, not whether the MP saw him urinating or driving at a high rate of speed.  Accordingly, Petitioner has not demonstrated that presentation of this evidence violated his right to Due Process.

Petitioner's fourth argument on these grounds is plainly meritless.  He argues that the picture used by the government of the assaulted MP's face "shows absolutely nothing" while the Government claimed at trial the picture "show[ed] swelling and a bruise."  (Id. at 8.)  According, to Petitioner, the prosecution therefore relied upon false evidence.  (Id.)  Once more, it was the jury's decision to credit or discredit the picture and determine whether it showed bruising.  The prosecution plainly believed it did, while Petitioner's counsel argued it did not.  Nothing about this scenario suggests that the prosecution relied upon false evidence to convict Petitioner.

––––––––––––––––––––

concluded that because Petitioner was driving at a high rate of speed before pulling over, he again passed the Federal Officer after stopping to urinate, thereby allowing him to reach the beach first.  Moreover, Petitioner proposes a possible resolution to his second argument when he states that in order to have seen him urinating the Federal Officer "would have had to be driving ten miles per hour and . . . been right behind me to observe all of this."  (Supporting Facts at 8.)

Petitioner's last argument with respect to prosecution on false evidence was the "use of pictures of STATE signs." (Id. at 8.) Petitioner here argues that the signs demonstrate conclusively that the area was "under State jurisdiction." (Id. at 9.) As discussed, however, the location of the occurrence was immaterial with respect to Count 1. Petitioner has therefore failed to demonstrate materiality on these grounds. See Hein, 601 F.3d at 908 (quoting Zuno-Acre, 339 F.3d at 889). In sum, Petitioner has failed to demonstrate that the prosecution relied upon false information in obtaining a conviction.

IV.    Cumulative Errors

Petitioner's last argument in his Habeas Petition is that his "Constitutional Right to Due Process of Law was Violated by the Cumulative Errors Occurring Before and During My Trial." (Mot. at 9.) The Ninth Circuit, however, already considered and rejected this argument on direct appeal:

> [Petitioner] suggests that the multiple errors at trial deprived him of his due process and fair trial rights and urges us to reverse under a "cumulative effects" theory. But the errors did not render the trial "fundamentally unfair." The prosecutor's improper questioning only highlighted a credibility judgment that [Petitioner] was himself asking the jury to make. And the prosecutor's vouching, when paired with a curative instruction, did not make the defense "far less persuasive than it might [otherwise] have been."

<u>Harrison</u>, 585 F.3d at 1160.  Here, Petitioner has directed the Court to no further error which would warrant revisiting this conclusion now.  Accordingly, Petitioner's Motion is **DENIED**.

V.    <u>Certificate of Appealability</u>

A Certificate of Appealability may only be issued if the petitioner "has made a substantial showing of the denial of a <u>constitutional</u> right."  28 U.S.C. § 2253(c)(2) (emphasis added).  The petitioner is required to show that reasonable jurists could debate whether the issues could have been resolved differently or are "adequate to deserve encouragement to proceed further."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483 (2000) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983), <u>superseded on other grounds</u> by 28 U.S.C. § 2253(c)(2)); <u>see also</u> <u>Mendez v. Knowles</u>, 556 F.3d 757, 771 (9th Cir. 2009).

Here Petitioner has made no such showing.  Reasonable jurists could not debate whether these issues could have been resolved differently.  Further, the issues raised are not "adequate to deserve encouragement to proceed further."  <u>Slack</u>, 529 U.S. at 483.  Accordingly Petitioner is **DENIED** a Certificate of Appealability.

<u>CONCLUSION</u>

For the reasons set forth above, the Court **DENIES** Petitioner's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Doc. # 188.) Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court also **DENIES** Petitioner a Certificate of Appealability.

IT IS SO ORDERED.

DATED: Honolulu, HI, July 19, 2011.

_____
David Alan Ezra
United States District Judge

<u>Rex Harrison v. United States</u>, CIVIL NO. 11-00106 DAE-BMK
CR. NO. 07-00384 DAE; ORDER (1) DENYING PETITIONER'S § 2255
MOTION AND (2) DENYING A CERTIFICATE OF APPEALABILITY